UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCIS MITCHELL, | Civil Action No. 14-6025 (BRM) |
| Petitioner, | |
| v. | **OPINION** |
| PATRICK NOGAN, et al., | |
| Respondents. | |

**MARTINOTTI, DISTRICT JUDGE:**

Before this Court is the petition for a Writ of Habeas Corpus of Petitioner Francis Mitchell ("Petitioner") brought pursuant to 28 U.S.C. § 2254, (ECF No. 1) and an application to proceed *in forma pauperis*. (ECF Nos. 5, 14.) Following an order to answer, Respondents filed a response to the petition (ECF No. 9-1.) For the reasons set forth below, T Petitioner's application to proceed *in forma pauperis* is **GRANTED**, Petitioner's habeas petition is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.

**I.   BACKGROUND**

In its opinion affirming the convictions and sentences of Petitioner, the Superior Court of New Jersey, Appellate Division, provided the following summary of the factual background of Petitioner's trial:

> The indictment arose out of two robberies of a Bank of America branch office in Franklin Township, the first on August 3, 2006, and the second on September 1, 2006.
>
> In the first robbery, at about 11:00 a.m. on August 3, 2006, an African-American male parked a black Hyundai Elantra at a gas station next to the bank. The man walked up to a teller and handed her a check and a note demanding money and informing her that he

1

had a gun. The teller observed what she believed to be a gun in the man's left hand, wrapped in a black plastic bag. The teller gave the man more than $3000 in cash. After he left, the teller reported the robbery to her supervisors, who locked the bank and called the police.

The police arrived and reviewed the bank's video surveillance footage with the teller. She described the robber as an African-American male, about five feet, four inches or five feet, five inches tall, wearing eyeglasses and a cap, unshaven, and "scruffy looking." Thereafter, the police reviewed a surveillance video from the gas station next to the bank, which showed the Hyundai pulling into the service station shortly before the time of the robbery and a man getting out of the car and walking toward the bank. About seven minutes later in that video, it appeared that the same individual returned from the direction of the bank. While on his way back to the Hyundai, the man dropped-and then picked up-what the police believed to be money. Then he got into the Hyundai and drove off. The license plate on the Hyundai was not discernable, but the video did reveal that the vehicle had front end damage.

The second robbery occurred at about 10:15 a.m. on September 1, 2006, less than a month after the first robbery. A man entered the same branch of the bank wearing a cap and carrying a bag. He was speaking on a cell phone. One of the bank's employees asked the man if he needed any help. The man refused her assistance and left.

Five minutes later, the same man reentered the bank. This time, another female teller asked the man if he needed assistance. The man asked the teller if she was free. She stated that she was, and he approached her teller station. As he did so, the man handed the teller a handwritten note. He demanded that she read the note and comply with its instructions. According to the teller, the note instructed her to put all her cash from her drawer into a black plastic shopping bag that the man handed to her. The teller complied, placing approximately $3000 into the bag. The man grabbed the bag and left. The teller then pressed the panic button to report the robbery.

The teller in the second robbery described the robber as about five feet, six inches or five feet, seven inches, African-American, and having a "good build." She recalled that he had been wearing a black coat, jeans, and a baseball cap that had a shiny logo on its flap.

A police detective recovered the note, as well as a business check, that the robber had presented to the teller. The check was made out to a "Chris Taylor," in the amount of $347. The detective was able

to read defendant's name under a portion of the upper left-hand corner of the check that had been scratched out with ink. With the aid of a backlight, the detective was able to make out a street address on the check for certain premises located at Route 27 in Somerset.

The parties stipulated that defendant owned a Chicken Holiday restaurant located at that Route 27 address. The parties also stipulated that the account number on the check matched a closed bank account that was formerly held by defendant. Through motor vehicle records, the detective ascertained that defendant had a Hyundai Elantra registered under his name, and that the vehicle matched the description of the vehicle observed at the gas station in the August 3, 2006 robbery.

Later that day, investigators assembled a photo array of several African-American males and showed the array to the second teller at her residence. From the array, the teller identified defendant as the robber.

. . . .

A grand jury subsequently issued a two-count indictment, charging defendant in Count One with first-degree robbery of the bank on August 3, 2006, and charging him in Count Two with first-degree robbery of that same bank on September 1, 2006. Before trial, defendant moved to sever the two counts of the indictment. The trial court denied the motion, concluding that severance was not warranted, particularly in light of the factual similarities between the two robberies, and the likelihood that, even if the trials were severed, under *N.J.R.E.* 404(b) evidence of one robbery would be admissible at the trial of the other robbery. Prior to trial, the trial court granted the State's motion to amend Count Two to a downgraded charge of second-degree, rather than first-degree, robbery.

During the three days of trial testimony in September 2008, the State presented testimony from four police detectives who investigated the robberies and from the two police officers who presented the photo array to the second teller. The State called the operator of the video equipment at the gas station, who verified that the equipment was in working order on August 3, 2006. The State also presented an auto technician from the gas station, who attested that the vehicle shown in the video was, in fact, a Hyundai Elantra from a model year between 2001 and 2005.

The State presented testimony from each of the two tellers who had given the robber the money he demanded. The first teller was unable

3

> to make an in-court identification of the robber, noting that, at the time of trial, defendant, unlike her recollection of the robber, was clean-shaven. The first teller also explained that she had been staring at what appeared to be a plastic-covered gun during the robbery. The second teller, however, positively identified defendant in court as the perpetrator of the September 1, 2006 robbery.
>
> . . . .
>
> [T]he jury viewed the surveillance video from the gas station, as well as videos filmed from surveillance cameras within the bank from both robberies.
>
> After the State rested its case, defendant moved for judgment of acquittal on the first count of the indictment, which the court denied.
>
> Defendant was the sole witness in his own case. He denied involvement in either of the robberies, asserting that other persons had access to his Hyundai Elantra. Defendant acknowledged on cross-examination that the Hyundai Elantra shown in the gas station video was indeed his car, and also that the check used in the second robbery was in fact his own check.
>
> On the second day of deliberations, the jury returned a guilty verdict on both counts of the indictment. Thereafter, the trial court sentenced defendant to a fifteen-year term on the count of first-degree robbery and a consecutive seven-year term on the second-degree robbery. Both sentences were made subject to the parole ineligibility periods prescribed by the No Early Release Act, ("NERA") *N.J.S.A.* 2C:43-7.2.

*State v. Mitchell*, Docket No. A-4151-08T2, 2010 WL 5376365, at *1-3 (N.J. Super. Ct. App. Div. Nov. 9, 2010).

Petitioner appealed his conviction and sentence. The Appellate Division affirmed his conviction on November 9, 2010, correcting a clerical error in Petitioner's period of parole ineligibility.[1] *Id.* at *10. The New Jersey Supreme Court denied certification on April 14, 2011. *See State v. Mitchell*, 205 N.J. 519 (2011). In 2011, Petitioner filed a post-conviction relief

---

[1] The Appellate Court explained that the period of parole ineligibility was improperly written as "18.7%" rather than "18.7 years." *Id.*

4

("PCR") petition in the Superior Court of New Jersey, Somerset County, (ECF No. 9-6), and an amended PCR petition in 2012. (ECF No. 9-7.) The Superior Court denied the PCR petition on May 30, 2012. (ECF No. 9-8.) Petitioner appealed, and on September 22, 2014, the Appellate Division affirmed the denial of the PCR petition. (*See* ECF No. 9-9.) Petitioner then filed his habeas petition with this Court on which was signed on September 23, 2014.

The petition raises four claims: [2]

1. It was an abuse of discretion by the motion judge to deny defendants motion to sever the two counts for separate trial;

2. It was error for the trial judge not to make further inquiry of a juror who exited the jury room in a highly emotional state;

---

[2] The Respondent argues that all of Petitioner's claims must be denied for failure to exhaust his PCR Application to the New Jersey Supreme Court. (ECF No. 9-1 at 9-11.) However, the four claims brought in the instant petition were raised in Petitioner's direct appeal, (ECF No. 9-4) and denied certification by the New Jersey Supreme Court. *State v. Mitchell*, 205 N.J. 519 (2011). Thus, they are deemed exhausted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added) (demonstrating that claims must be exhausted once, either on direct appeal or on PCR appeal: "state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process"). In Petitioner's PCR application, he raised new claims of ineffective assistance of counsel, among other things, which were denied by the New Jersey Superior Court, Law Division. (ECF No. 9-8). The denial of the PCR petition was affirmed by the Appellate Division. (ECF No. 9-9.) These claims though were never appealed to the New Jersey Supreme Court.
   In the instant petition, Petitioner states four grounds for which he is seeking habeas relief. (ECF No. 1 at 5-10.) For each ground, in response to the form question, "If you did not exhaust your state remedies [], explain why:" he writes, "Defendant claims ineffective assistance of counsel on (PCR) as well, because points were sent to lawyer, but not used or raised at hearing." *Id*. It is not clear what Petitioner means and if he intends to raise ineffective assistance of PCR counsel as a ground for habeas relief here. To the extent he is making this claim, that claim would fail, because, as a general rule, "there is no constitutional right to an attorney in state post-conviction proceedings . . . [c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (internal citations omitted). Furthermore, as detailed above, Petitioner exhausted the four claims he is bringing in this federal habeas petition by raising them in the direct appeal proceedings.

5

> 3. The prosecutor's invitation extended to defendant during summation to stand next to the video tape picture of the robber was improper and denied defendant a fair trial;
>
> 4. The excessive sentence and the imposition of consecutive sentences, were both an abuse of discretion by the trial judge.

(ECF No. 1.)

Respondent was ordered to file an answer to the habeas petition. (ECF No. 2.) Respondent argues the claims have not been exhausted, they are procedurally defaulted, do not raise federal constitutional issues and lack merit. (ECF No. 9-1.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal

7

court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

### III.   DECISION

#### A.   Claim I: Failure to Sever Trial

Petitioner claims it was an abuse of discretion by the trial judge not to sever his two robbery counts into separate trials. (ECF No. 1 at 5.) Respondent counters that "[s]uch discretionary determinations are not of the subject matter traditionally appropriate for habeas relief." (ECF No. 9-1 at 16.)

Petitioner presented this claim to the Appellate Division on direct appeal, which represents the last reasoned decision on this claim. It rejected this claim finding joinder was proper because the two crimes were substantially similar:

> The State's proofs showed that the two robberies were committed essentially in the same manner, in both instances with the use of a handwritten, printed note, and with a business check used to direct the tellers to provide the money to the robber. Additionally, the robberies were committed only a month apart at the same bank, against two tellers of the same gender and of the same apparent race or nationality. This last point is bolstered by the evidence that, on the day of the second robbery, the perpetrator aborted an earlier pass at the teller area until the targeted teller became available.

(ECF No. 9-4 at 11.)

The Supreme Court has explained that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States*

*v. Lane,* 474 U.S. 438, 446 n. 8 (1986).[3] Denial of a motion to sever violates due process "only if there is a serious risk that a joint trial would compromise a specific trial right of . . . the defendant[] or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Here, the state court's decision not to sever the two robbery charges did not result in prejudice so great as to violate Petitioner's right to a fair trial, nor was it an unreasonable application of clearly established Supreme Court precedent. The decision not to sever was based on the two crimes being uniquely similar and carried out in a nearly identical manner. The crimes involved the same bank, being robbed twice, within a short period of time, both took place during the day, with a note submitted to the teller demanding the money. Further, having reviewed the trial transcript, the trial judge instructed the jury, in precise terms, to consider each count of robbery separately. (ECF No. 9-17 at 85.) *See Zafiro*, 506 U.S. at 539 (explaining that while sometimes separate trials are necessary "less drastic measures, such as limiting instructions, often will suffice"). The judge then proceeded to discuss the elements of each crime separately, while noting that first-degree robbery and second-degree robbery are different crimes. *Id.* at 85-89. *See Penry v. Johnson,* 532 U.S. 782, 799 (2001) (noting that "[w]e generally presume that jurors follow their instructions"); *see also United States v. Torres*, 251 F. App'x 763, 764 (3d Cir. 2007) (wherein the "District Court gave the jury explicit instructions that it was to consider separately the evidence for each count. The jury is presumed to have followed its instructions").

Further, joining the trials avoided the need to repeat similar evidence at separate trials, and did not preclude the jury from fairly judging Petitioner's guilt or innocence. *See Spencer v. State*

---

[3] *See Duncan v. Louisiana,* 391 U.S. 145, 148–149 (1968) (extending Fifth and Sixth Amendment rights to a fair trial, to state criminal trials through the Due Process Clause of the Fourteenth Amendment).

*of Tex.*, 385 U.S. 554, 562 (1967) (internal citations omitted) ("all joint trials . . . furnish inherent opportunities for unfairness . . . [t]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest"). In light of the judge's clear instruction to the jury, and the similarity of the crimes committed, Petitioner has not shown that he was subject to prejudice as a result of the denial to sever the trials. In the absence of an unreasonable application of Supreme Court law, Petitioner fails on this claim to show he is entitled to habeas relief. Accordingly, Ground One is **DENIED**.

      **B.**      **Claim II: Emotional State of Juror**

In Ground Two, Petitioner claims the trial judge erred because he did "not make further inquiry of a juror who exited the jury room in a highly emotional state," and that the outcome of the case would have been different had the judge done so. (ECF. No. 1 at 7.) Petitioner's brief on direct appeal, which elaborates on his claims, states:

> During [the] second day of jury deliberations, Sheriff's officers reported one juror had exited the jury room. She was "ranting," "crying" and her face was pale. The trial judge was notified and convened counsel regarding the development.

(ECF No. 11-2 at 16.)Following the incident, the "judge then brought the entire jury back into the courtroom and instructed them to return to their deliberations at the point where the juror had left." (ECF No. 9-4, at 14.)

The Appellate Division, on direct appeal, analyzed the claim and found it lacking merit:

> *Rule* 1:8-2 provides that if, "after submission of the case to the jury, a juror . . . is discharged by the court because of illness or other inability to continue, the court may direct the clerk to draw the name of an alternate juror to take the place of the juror who is . . . discharged." *R.* 1:8-2(d)(1). Our Supreme Court has interpreted this

10

> to mean that "a juror who expressly states that she cannot be impartial or that she is controlled by an irrepressible bias, and therefore will not be controlled by the law, is unable to continue as a juror for purposes of *Rule* 1:8-2(d)(1), and must be removed from a jury." *State v. Jenkins,* 182 *N.J.* 112, 128 (2004).
>
> . . . .
>
> [I]n this case, the juror who briefly stepped out of the jury room never expressed an inability to continue her deliberations. The trial judge, understandably hesitant to intrude upon the jury's deliberations, did not wish to single out the juror with questioning that might have alarmed or concerned the other jurors. Instead, the judge reasonably inferred that the juror's previously-reported back and neck pain was the likely cause of her request to exit the jury room before lunch and sit in the courtroom. The judge reasonably permitted the juror to return to the jury room after their lunch hour and continue deliberations, which the juror did without expressing any reservations or complaint. The judge rightly assumed that, if there was an emotional or psychological reason that caused the juror to be unable to continue, she would have conveyed that upon returning to the jury deliberation room after the lunch recess.
>
> . . . .
>
> Given the particular circumstances as they developed in this case, and the detailed observations made on the record by the trial judge, we conclude that the judge handled the situation in a reasonable fashion. The judge was not obligated to conduct any further inquiry into the reasons for the juror's temporary departure from the jury room, and the verdict should not be disturbed on this basis.

(ECF No. 9-4 at 17-19.)

Petitioner's brief to the Appellate Division on direct appeal, cited only to state law in support of his claim. "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). This can be done

> without explicitly referencing specific portions of the federal constitution or statutes . . . through (a) reliance on pertinent federal

11

>cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* Petitioner has not done this.

Even if this Court construes this as a federal claim, Petitioner still fails to show he is entitled to habeas relief because he has not shown that the state court rendered a decision that involved an unreasonable application of clearly established federal law. The Sixth Amendment right to a jury trial, guarantees a criminal defendant the right to a "fair trial by a panel of impartial, indifferent jurors," *Irvin v. Dowd,* 366 U.S. 717, 722 (1961) (citations omitted), and that right is extended to state criminal trials through the Due Process Clause of the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 148–149 (1968). "An impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree*, 476 U.S. 162, 163 (1986); *see also United States v. Tindal*, 357 F. App'x 436, 438 (3d Cir. 2009) (explaining that "[j]urors are presumed to be impartial").

Having carefully reviewed the record, there is nothing to indicate this juror was anything but impartial. After the incident, the officer who permitted the juror to leave the jury room was fully examined by the judge. (ECF No. 9-19 at 9-12.) Moreover, the judge states on the record that this particular juror had indicated she suffered from back and neck problems which was the presumed cause of her discomfort. (ECF No. 9-19 at 15, 18.) *See Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable").

Akin to this, the Supreme Court has explained that a judge's decision as to the impartiality of a prospective juror on *voir dire*, because it relates to "credibility" and "demeanor," "is entitled, even on direct appeal, to special deference." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (internal citations omitted). "The respect paid such findings in a habeas proceeding certainly should be no less." *Id*. Here, the trial judge indicated on the record that he assessed the juror's demeanor after the episode and she returned to the jury room without hesitation or protest. (ECF No. 9-19 at 20.) Added to this, the judge instructed the jury to repeat any deliberations the juror had potentially missed. (ECF No. 9-19 at 19.) *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("[a] jury is presumed to follow its instructions.").

Accordingly, there is no showing that the state court unreasonably applied clearly established federal law. As such, Ground Two is **DENIED**.

### C. Claim III: Prosecutorial Misconduct

In Ground Three, Petitioner argues his conviction should be overturned because of prosecutorial misconduct during summation. Specifically, he states, "[t]he prosecutor[']s invitation extended to defendant during summation to stand next to the video tape picture of the robber was improper and denied defendant a fair trial." (ECF No. 1 at 8.)

Petitioner bases his allegations on the prosecutor's actions during trial, in which "during her summation, the prosecutor requested that defendant stand next to a video screen. The screen displayed an enlarged still image of the perpetrator of the . . . robbery taken from the bank's surveillance video." (ECF No. 9-4 at 20.)

The trial court, sustained defense counsel's objection at sidebar, and stated:

> I don't think that during summation it is proper to ask the jury to-to exhibit the defendant to the jury. You can say[, ']look at him. Look

13

> at the pictures.['] But you can't bring him up. I am not going to permit that.
>
> What I'm going to do is I am going to tell the jury that [defendant] will remain at counsel table at my instruction, that he is neither required [n]or permitted to be exhibited to the jury at this stage of the case, and that will obviate the necessity of a curative instruction.

*Id.*

      The last reasoned decision on this claim comes from the Appellate Division on Petitioner's direct appeal. The court found the prosecutor's actions did not deprive Defendant of a fair trial:

> We need not comment at length about defendant's claim that the prosecutor's articulated request-which was swiftly and conclusively rejected by the trial judge-had the clear capacity to lead to an unjust verdict. The prosecutor was attempting to respond to the forceful arguments that had been made by defense counsel in his own summation, in which he asserted that defendant had been misidentified as the perpetrator of both robberies. Defendant's counsel emphasized that one of the two tellers was unable to positively identify defendant as the robber and he specifically reminded the jurors that they were "going to see the photographs again." In that context, the prosecutor's mere invitation to defendant to stand next to the video screen after the proofs had closed-although appropriately denied by the trial court-was not "so egregious that it deprived the defendant of a fair trial." *See State v. Frost,* 158 *N.J.* 76, 83 (1999.) Nor was any curative instruction required, beyond what the judge advised the jurors after the sidebar.

(ECF No. 9-4 at 21.)

      In analyzing claims of prosecutorial misconduct, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The appropriate standard is "the narrow one of due process and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly*, 416 U.S. at 642). It is "not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id.* (quoting *Donnelly*, 416 U.S. at 644). Remarks by the prosecutor must be placed in context, and

14

evaluated in light of the defense arguments that preceded it. *Id.* at 179-81. The severity of the prosecutor's actions, the effect of any curative instructions and the evidence against the defendant should be considered. *See Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). "[T]he stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair." *Marshall v. Hendricks*, 307 F.3d 36, 69 (3d Cir. 2002); *see Greer v. Miller*, 483 U.S. 756, 767 n. 8 (1987) (citations omitted) (explaining "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant").

      This Court has carefully reviewed the trial transcript of the prosecutor's summation with respect to the alleged prosecutorial misconduct, and finds Petitioner's claims insubstantial. Immediately after the prosecutor's invitation to Petitioner to stand next to the video screen, his defense counsel requested to speak with the judge at sidebar and objected to the prosecutor's invitation. (ECF. No. 9-17, at 59-61.) The judge, wasting no time, sustained the objection and immediately after gave a curative instruction to the jury explaining to them in precise terms that it was not permissible for the defendant, Mr. Mitchell, to stand near the screen. (ECF. No. 9-17, at 61.) The trial judge stated:

> Ladies and gentleman, Petitioner has been invited to come up and stand next to the video. He will not be given the opportunity to accept that invitation because I will require Petitioner to remain at counsel table, because at this stage of the trial it is not permissible for him to be exhibited to you next to the video. So he's going to stay put because I have determined that to do otherwise would not be appropriate. Thank you.

(ECF. 9-17 at 61.)

The judge's clear instructions left no room for doubt in the minds of the jurors, that the prosecutor's request was improper. Further, Petitioner was positively identified in a photo array and in court by one of the bank tellers, demonstrating, among other things, the strength of the case. Because the prosecutor's action was not severe, the curative instructions were immediate and precise, and the evidence against the defendant was substantial, the prosecutor's actions did not so infect the trial with unfairness. *See Darden*, 477 U.S. at 181; *see also Gooding v. Wynder*, 459 F. App'x 83, 85–86 (3d Cir. 2012) (concerning prosecutor's comments at various stages of trial). Therefore, habeas relief on Ground Three is **DENIED** because it was not an unreasonable application of clearly established federal law.

> **D.** **Claim IV: Excessive/Consecutive sentence**

On Petitioner's final ground for habeas relief, he states the trial judge abused his discretion by implementing an excessive and consecutive sentence. (ECF No. 1 at 10.) Petitioner further explains he showed remorse throughout trial and no one was injured as a result of his crime. *Id*. Petitioner was sentenced "to a fifteen-year term on the count of first-degree robbery and a consecutive seven-year term on the second-degree robbery. Both sentences were made subject to the parole ineligibility periods prescribed by the No Early Release Act." (ECF. No. 9-4 at 6.)

Respondent argues this claim is a matter of state law and cannot be brought in a federal habeas petition. (ECF No. 9-1 at 27.) The Appellate Division, in reviewing the trial court's decision stated:

> [W]e are satisfied that the sentences imposed upon defendant were within its discretionary authority of the trial court and were not excessive, particularly given defendant's prior criminal history, which included multiple indictable convictions and disorderly persons convictions. The mitigating factors of excessive hardship and age cited by defendant were not manifestly applicable, and they do not, in any event, outweigh the substantial aggravating factors identified by the trial judge.

16

> Moreover, the trial judge provided a detailed and sound written justification for imposing consecutive sentences for the two robberies, which were conducted about a month apart and individually victimized two different bank tellers.

(ECF No. 9-4 at 22-23.)

In Petitioner's brief to the Appellate Division on direct appeal, he cited to *State v. Natale*, 184 N.J. 458 (2005), which he claims relies on *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), for the proposition that presumptive term sentencing violates his constitutional rights. (ECF No. 11-2 at 24.) While Petitioner has never directly raised a *Blakely* claim, this Court will construe it as such. *But see Reid v. Ricci*, 2008 WL 2984207, at *12 (D.N.J. July 31, 2008) ("absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process . . . the legality of [a Petitioner's] state court sentence is a question of state law); *see also Chapman v. United States,* 500 U.S. 453, 465 (1991) (citations omitted) ("a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment").

A review of the record demonstrates that *Blakely* is not applicable. In *Blakely*, the trial court sentenced the defendant to more than three years beyond the 53-month statutory maximum, on the basis that he acted with "deliberate cruelty." *Blakely*, 542 U.S. at 303. The Supreme Court reversed explaining that a defendant's Sixth Amendment right to a jury trial is violated where the facts supporting such a finding are neither found by the jury, nor admitted to by the defendant. *Id*

at 303-04. There, the sentence went well beyond the outer limit of the ordinary sentencing range.[4] That is not the case here. The trial judge stated on the record that the respective sentences of 15 and 7 years fell within the ordinary New Jersey sentencing range,[5] (ECF No. 9-20 at 42), and he considered the fact that presumptive sentences do not apply. *Id.* On direct appeal, the Appellate Division found no merit to Petitioner's arguments that his sentences were excessive, noting that the sentences imposed were within the discretionary authority of the trial court in light of the aggravating circumstances. (ECF No. 9-4 at 22-23.) Because Petitioner fails to show any violation of his federal constitutional rights, he is not entitled to habeas relief and this claim is likewise **DENIED**.

**IV.  CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this

---

[4] Similarly, in *Apprendi*, 530 U.S. 466, the defendant's penalty went beyond the prescribed statutory maximum.

[5] *See* N.J.S.A. § 2C:43-6:

> Sentence of imprisonment for crime; ordinary terms; mandatory terms:
>
> a. Except as otherwise provided, a person who has been convicted of a crime may be sentenced to imprisonment, as follows:
>
> (1) In the case of a crime of the first degree, for a specific term of years which shall be fixed by the court and shall be between 10 years and 20 years;
>
> (2) In the case of a crime of the second degree, for a specific term of years which shall be fixed by the court and shall be between five years and 10 years[.]

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insomuch as Petitioner's claims are without merit, Petitioner's habeas petition is inadequate to proceed further and therefore, a certificate of appealability is **DENIED**.

V. CONCLUSION

For the reasons stated above, Petitioner's *in forma pauperis* application (ECF Nos. 5, 14) is **GRANTED**, Petitioner's habeas petition (ECF No. 1) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. An appropriate order will follow.

Date: May 11, 2018 */s/ Brian R. Martinotti*
                                                                HON. BRIAN R. MARTINOTTI
                                                                UNITED STATES DISTRICT JUDGE